IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAMELA L. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-3107-CV-S-RED |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Pamela L. Johnson ("Johnson") seeks judicial review of the Commissioner's denial of her request for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*. Plaintiff has exhausted all of her administrative remedies, and therefore, pursuant to Section 1631(c)(3) of the Act and 42 U.S.C. § 1383(c)(3), judicial review is now appropriate. After carefully reviewing the record, the Court hereby **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").[1]

### I. Background

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Additionally, the ALJ's decision within the administrative record fully sets forth his findings and as such will not be repeated herein in its entirety except to the extent necessary to address Plaintiff's arguments.

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

## II. Standard of Review

The Court's review is limited to determining whether the Commissioner applied the correct standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2000); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a de novo review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are: (1) whether the claimant is currently engaging in "substantial gainful

activity," (2) whether the claimant is severely impaired, (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law, (4) whether the claimant, with her current Residual Functional Capacity ("RFC") can meet the demands of her past work, and if not; (5) whether the claimant retains the capacity to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that he or she is disabled. If the claimant is not able to perform his or her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform, although the ultimate burden of persuasion remains with the claimant. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

### III. Analysis

Johnson raises two arguments in opposition to the ALJ's finding of no disability. First, Johnson argues the ALJ erroneously failed to comply with SSR-96-8p in not developing a proper and well-supported residual functional capacity. Specifically, Johnson alleges that the ALJ provided no analysis or rationale for her residual functional capacity assessment and that the medical evidence does not support the ALJ's assessment. Johnson also argues the ALJ erred by giving too much weight to the testimony of the vocational expert.

#### A. Assessment of Residual Functional Capacity

A residual functional capacity assessment must be based on all the relevant evidence in the case record, including medical history, reports of daily activity, medical source statements,

-3-

and effects of treatment. 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); *see also Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000). Social Security Ruling 96-8p states that the residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." 61 Fed. Reg. at 34,478.

Here, Johnson argues that the ALJ failed to indicate which evidence he relied upon in making the residual functional capacity determination. The Court disagrees. The ALJ devoted over two pages of his decision discussing medical evidence, nonmedical evidence, and Johnson's subjective complaints before formulating the residual functional capacity assessment. While the ALJ could have provided more explicit explanations as to how the evidence supports the residual functional capacity assessment, any arguable deficiency in opinion writing technique is not enough to set aside the opinion of an ALJ when the opinion is supported by substantial evidence. *Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir. 1996).

Johnson further argues the ALJ's assessment of residual functional capacity is not supported by the medical evidence and is actually "against the great weight of the evidence." (Pl.'s Br. at 14). After reviewing the claimant's medical evidence, the Court concludes the ALJ's opinion is supported by substantial evidence on the record as a whole. Other than Dr. Suva's assessment, which the ALJ properly discounted as against the preponderance of the medical evidence, no other doctor who has treated or examined Johnson has stated or implied that she is disabled and unable to work. (Tr. at 22). Dr. Hayes, a specialist in rheumatology, examined Johnson and opined that she did not have any evidence of inflammatory arthritis or other joint abnormalities and that there was "no physical disability revealed by this exam." (Tr.

-4-

at 281). Claimant alleges significant limitations due to mental impairments; however, on examination, Dr. Stillwell concluded that "claimant's ability to perform work-related functions appears unimpaired." (Tr. at 223). Thus, the Court is satisfied that the ALJ's residual functional capacity assessment accurately conveyed all of Marshall's alleged physical and mental limitations based on substantial evidence on the record.

## B. Testimony of Vocational Expert

Johnson's final argument is that the ALJ erred by giving too much weight to the testimony of the vocational expert. Johnson claims the testimony of the vocational expert conflicts with the Dictionary of Occupational Titles ("DOT") and that in those circumstances, the ALJ "must elicit a reasonable explanation" from the vocational expert to explain any conflicts before relying on the vocational expert's evidence. 65 F.R. 75,759, 75,760 (Dec. 4, 2000). According to Johnson, a conflict exists because neither the ALJ nor the vocational expert ever supplied correct DOT numbers for the positions of hand packager, assembler, and cuff folder mentioned during the hearing. Johnson further argues that when questioned by counsel, the vocational expert testified to a DOT number of 920.685-078 which corresponds to work that requires greater effort than she is capable of performing.

The Court finds that the reference to the incorrect DOT number does not represent a conflict between the vocational expert's testimony and the DOT. The vocational expert testified that Johnson was capable of performing light work that involved simple, repetitive tasks. The positions of hand packager, assembler, and cuff folder listed at the hearing all qualify as light exertional work according to the DOT. *See* DOT 685.687-014 ("cuff folder"); DOT 706.687-010 ("production assembler"); DOT 706.684-022 ("small products I assembler). Thus, there is

-5-

no conflict between the expert testimony and the DOT, and any mistake on the part of the vocational expert in citing the wrong DOT number does not require remand. Consequently, the Court finds the ALJ did not err in relying on the testimony of the vocational expert.

## IV. Conclusion

Upon review of the record, the Court finds that substantial evidence on the record as a whole supports the ALJ's findings in this case. Accordingly, it is hereby ORDERED that the decision of the ALJ is **AFFIRMED.**

**IT IS SO ORDERED**.

DATE:  January 24, 2007         */s/ Richard E. Dorr*
                                RICHARD E. DORR, JUDGE
                                UNITED STATES DISTRICT COURT